Jane L. Moisan, OSB # 181864
PEOPLE'S LAW PROJECT
818 S.W. 4th Ave. #221-3789
Portland, OR 97204
Tel: 971-258-1292
peopleslawproject@gmail.com

Gabriel Chase, OSB # 142948
CHASE LAW, PC
621 S.W. Alder St., Ste. 600
Portland, OR 97205
Tel: 503-294-1414
Fax: 503-294-1455
gabriel@chaselawpc.net

David D. Park, OSB # 803358
ELLIOTT & PARK, P.C.
324 S. Abernethy Street
Portland, Oregon 97239-4356
Tel: 503-227-1690
Fax: 503-274-8384
dave@elliott-park.com

Michelle R Burrows, OSB # 861606
MICHELLE R. BURROWS P.C.
1333 Orenco Station Parkway # 525
Hillsboro, OR 97124
Tel: 503-241-1955
michelle.r.burrows@gmail.com

Erious Johnson, Jr., OSB #130574
HARMON JOHNSON LLC
University Station Executive Suites
698 12th St. SE
Ste 240/No. 4
Salem, OR 97301
Tel: (503) 991-8545
Fax: (503) 622-8545
Ejohnson.HJLLC@gmail.com

Christopher A. Larsen, OSB # 910679
PICKETT DUMMIGAN MCCALL LLP
210 SW Morrison St., 4th Fl.
Portland, Oregon 97204
Tel: 503-223-7770
Fax: 503-227-5350
chris@pdm.legal

Joe Piucci, OSB # 135325
PIUCCI LAW LLC
900 SW 13th Ave., Ste. 200
Portland, OR 97205
Tel: 503-228-7385
Fax: 503-228-2571
joe@piucci.com

Attorneys for Plaintiffs

**1 – PLAINTIFF'S COMPLAINT**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATHAN HABERMAN-DUCEY, Individually, | Civil Action No. 3:20-cv- |
| Plaintiff, | |
| | COMPLAINT |
| v. | *Bivens* Fourth Amendment, Excessive Force |
| GABRIEL RUSSELL, Regional Director with the Department of Homeland Security's Federal Protective Service; ALLEN JONES; RUSSEL BURGER; ANDREW SMITH; MARK MORGAN; RICHARD CLINE; JOHN DOE SUPERVISORY DEFENDANTS 1-60; and JOHN DOE PATROL LEVEL DEFENDANTS 61-62, agents of the U.S. Marshals Service, Federal Protective Service, U.S. Department of Homeland Security and U.S. Customs and Border Protection, acting in concert and in their Individual capacities, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

**2 – PLAINTIFF'S COMPLAINT**

## PRELIMINARY STATEMENT

1.

This is an action brought to vindicate Plaintiff's rights under the Fourth Amendment of the Constitution of the United States pursuant to *Bivens v. Ten Unnamed Federal Officers*, 403 U.S. 388 (1971).

2.

Defendants violated Plaintiff Nate Haberman's rights on July 20, 2020 when he was subjected to unreasonable force while volunteering as a Legal Observer at a Black Lives Matter protest in downtown Portland, Oregon.

3.

Plaintiff wore the signature neon green Legal Observer hat and was walking by himself when Defendants raised their riot guns from across the street, tracked Mr. Haberman-Ducey in their sights, and shot twice in quick secession, apparently aiming at his right hand. One of the shots struck Plaintiff's right wrist, breaking his bone, effectively ending his ability to legal observe at protests, and violating his constitutional rights.

4.

When defendants seized Plaintiff through the intentional application of excessive force, Plaintiff had no way of knowing who they were because the federal agents, in a moment of historic outcry for police accountability, were devoid of any individual identifiers.

**3 – PLAINTIFF'S COMPLAINT**

5.

Plaintiff seeks an award of compensatory and punitive damages.

## JURISDICTION

6.

This action is brought pursuant to the Fourth Amendment to the United States Constitution and *Bivens v. Ten Unnamed Federal Officers*, 403 U.S. 388 (1971), for violations of constitutional rights held by all persons.

7.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8.

Plaintiff is in the process of filing Form 95, giving notice under the Federal Tort Claims Act of intention to sue the United States for damages.

9.

Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon, and because Defendants are subject to personal jurisdiction in the District of Oregon.

## PARTIES

10.

For all relevant times, Plaintiff Nate Haberman-Ducey is a resident of Portland, Oregon. For all relevant times, Plaintiff Haberman-Ducey served as a volunteer legal observer for the National Lawyers Guild during the BLM protests in Portland, Oregon.

**4 – PLAINTIFF'S COMPLAINT**

**Defendants**

### a. Supervisory Defendants

11.

At all material times, "Operation Diligent Valor" was a coordinated effort between the Department of Homeland Security (DHS), by and through the Federal Protective Service (FPS), U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP) (collectively, "DHS Forces"), working with the United States Marshals Services (USMS). DHS and USMS contributed supervisory staff (Supervisory Defendants) and subordinate patrol level staff (Patrol Level Defendants). At all relevant times, Supervisory Defendants were acting in concert and under color of law. Supervisory Defendants are sued in their individual capacities for their own actions alleged herein.

### b.    DHS Supervisory Defendants

12.

At all material times, **Gabriel Russell** was a Regional Director with the DHS's Federal Protective Service Region 10. Defendant Russell was the Commander of the DHS Rapid Deployment Force for Operation Diligent Valor. He was responsible for and exercised tactical direction and control over DHS Forces stationed in and/or deployed to Portland, Oregon for Operation Diligent Valor.

13.

At all material times, **Allen Scott Jones** was the Deputy Director for Operations for DHS FPS Region 10 and was the Deputy Incident Commander of all DHS forces stationed in and/or deployed to Portland, Oregon, for Operation Diligent Valor.

**5 – PLAINTIFF'S COMPLAINT**

14.

At all material times, **Mark Morgan** was the Acting Commissioner of CBP. On information and belief, Defendant Morgan authorized and oversaw the deployment of CBP's Border Patrol Tactical Unit (BORTAC), ostensibly designated with FPS authority under 40 U.S.C. § 1315 and deployed to Portland, Oregon, as part of Operation Diligent Valor.

15.

At all times material, **Richard "Kris" Cline** was the Deputy Director of FPS. On information and belief, Defendant Cline authorized and oversaw the deployment of FPS forces, including CBP and ICE forces ostensibly designated with FPS authority, to Portland, Oregon, as part of Operation Diligent Valor.

16.

At all material times, John Doe Supervisory Defendants from each of FPS, CBP and ICE were tactical commanders, area commanders, supervisors, and team leaders who were responsible for the direction and control of all subordinate Patrol Level DHS forces stationed and/or deployed to Portland, Oregon, for Operation Diligent Valor and whose identities are presently unknown to Plaintiffs. At all material times, John Doe Supervisory Defendants from USMS were onsite (at or near Hatfield Courthouse) commanders, supervisors, and team leaders who were responsible for direction and control of all subordinate Patrol Level USMS forces stationed at and/or deployed to the Hatfield Courthouse during the month of July 2020 and whose identities are presently unknown to Plaintiffs. Plaintiffs intend to name these individuals as their true names and identities are obtained through discovery.

**6 – PLAINTIFF'S COMPLAINT**

17.

John Doe Supervisory Defendants 1-15 are supervisory officers of the Federal Protective Services.

18.

John Doe Supervisory Defendants 16-30 are supervisory officers of U.S. Immigration and Customs Enforcement.

19.

John Doe Supervisory Defendants 31-45 are supervisory officers of U.S. Customs and Border Protection.

20.

At all material times, DHS Supervisory Defendants knew or should have known that DHS lacked lawful authority to issue or enforce a dispersal order on City of Portland streets.

c.    **USMS Supervisory Defendants**

21.

USMS Supervisory and Patrol Level Defendants are employees of the U.S. Department of Justice and are not subject to Defendant Gabriel Russell's command or control.

22.

At all material times, **Russel Burger** was the U.S. Marshal for the District of Oregon. Upon information and belief, Defendant Burger was responsible for and exercised tactical direction and control over all USMS forces stationed in or deployed to Portland, Oregon, for protection of the Hatfield Courthouse and nearby federal properties as part of Operation Diligent Valor.

**7 – PLAINTIFF'S COMPLAINT**

23.

At all material times, **Andrew Smith** was employed by the USMS as the Assistant Director for the Tactical Operations Division and was responsible for and exercised tactical direction and control over USMS forces, including members of the USMS Special Operations Group (SOG) forces, stationed in or deployed to Portland, Oregon, as part of Operation Diligent Valor.

24.

John Doe Supervisory Defendants 46-60 are supervisory officers of the U.S. Marshals Service. At all times material, John Doe Supervisory Defendants 46-60 were onsite (at or near Hatfield Courthouse) commanders, supervisors, and team leaders who were responsible for direction and control of all subordinate Patrol Level USMS forces stationed at and/or deployed to the Hatfield Courthouse during the month of July 2020. John Doe Supervisory Defendants 46-60 had no management control over any employee of DHS.

25.

At all times material, the USMS Supervisory Defendants, including John Doe Supervisory Defendants, knew that USMS lacked lawful authority to issue or enforce a dispersal order on City of Portland streets, to and including SW Fourth Avenue, and knew or should have known that legal observers whose conduct was lawful were not subject to crowd dispersal orders.

26.

John Doe Supervisory Defendants are named herein under false names because their true identities are not presently known to Plaintiff. Plaintiff intends to amend to name these defendants by their true names or dismiss them as parties, as appropriate, as discovery progresses and their specific roles in the constitutional violations alleged herein are clarified.

**8 – PLAINTIFF'S COMPLAINT**

**d.      DHS and USMS Patrol Level Defendants**

27.

On information and belief, John Doe Patrol Level Defendants 61 and 62 are federal agents of DHS or USMS dispatched to or stationed in Portland, Oregon, as part of Operation Diligent Valor and in furtherance of the June 26 Executive Order 13933, "On Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence." John Doe Patrol Level Defendants 61 and 62 are sued in their individual capacities for their own actions herein. At all relevant times, these Defendants were acting in concert in the course of their employment and under color of law. John Doe Patrol Level Defendants 61 and 62 are named herein under false names because their true names and identities were concealed and are not presently known to Plaintiff. Plaintiff intends to amend to name these defendants by their true names or dismiss them as parties, as appropriate, as discovery progresses and their specific roles in the constitutional violations alleged herein are clarified.

28.

Plaintiff intends amend to add additional defendants and/or dismiss defendants as discovery proceeds, including without limitation, any supervisor or individual involved in the events alleged in this complaint.

## STATEMENT OF FACTS

"*We cannot understand our present moment without recognizing the lasting damage caused by allowing white supremacy and racial hierarchy to prevail . . .*" Bryan Stevenson, Director Equal Justice Initiative

29.

On May 25th, 2020, a Black man named George Floyd was murdered in Minneapolis, Minnesota, by an officer of the City of Minneapolis Police Department, Derek Chauvin. Chauvin

**9 – PLAINTIFF'S COMPLAINT**

held his knee to Floyd's neck for at least eight minutes and 46 seconds while his fellow police officers stood by and casually watched Floyd die. Floyd's final words were, "I can't breathe." Chauvin and his fellow officers ignored the pleas for mercy coming from bystanders, including the teenage girl whose footage alerted the world to this particular instance of police brutality.

30.

Following George Floyd's gruesome public murder, protests erupted nationwide in support of the Black Lives Matter (BLM) movement and against systemic racism, police brutality and use of excessive force. Across the country, police met these protests with violence, brutality and excessive force.



31.

Although George Floyd was one of the more nationally known instances of State-Sanctioned execution—it was by no means an isolated incident. Police in the United States killed 164 Black people over the first 8 months of 2020.[1]

---

[1] Li Cohen, *Police in the U.S. killed 164 Black people in the first 8 months of 2020. These are their names. (Part I: January-April)*, CBS News (2020), https://www.cbsnews.com/pictures/black-people-killed-by-police-in-the-u-s-in-2020/ (last visited March 18, 2021); *(Part II: May-August)*, https://www.cbsnews.com/pictures/black-people-killed-by-police-in-the-us-in-2020-part-2/ (last visited March 18, 2021).

**10 – PLAINTIFF'S COMPLAINT**

32.

On May 28, 2020, thousands of people began months of sustained protests in Portland, Oregon with nightly demonstrations occurring in downtown Portland across from the Mark O'Hatfield Courthouse located at 1000 SW Third Avenue in downtown Portland ("Hatfield Courthouse") and the Multnomah County Justice Center.

33.

Portland Police Bureau officers met these protests with excessive force, indiscriminately attacking the crowd with pepper balls, batons, sonic weapons, and, most notably, tear gas, in the midst of a global pandemic that attacked respiratory systems.

34.

At the state and local level, between June 9, 2020 and June 30, 2020, emergency court orders, city directives, and new police reforms in state law placed limitations on the use of tear gas and other force. By the beginning of July 2020, protest attendance in Portland had decreased from approximately 10,000 demonstrators out each day to only approximately 150 people gathering nightly at the Hatfield Courthouse.

35.

However, Defendants deeply undermined these local actions aimed at de-escalating police violence against protesters, legal observers, medics, press, and the public when, following President Donald J. Trump's June 26, 2020 Executive Order 13933, "On Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence," militarized federal agents descended on the City of Portland.

11 – PLAINTIFF'S COMPLAINT

36.

Following this deployment, unidentified agents, many wearing military fatigues, emerged for the first time from the Hatfield Courthouse and engaged with members of the public as enemy combatants.

 

 

37.

Over the month of July, the federal government unleashed unprecedented, sustained violence and intimidation on the people of Portland. Rather than employing crowd control tactics with a focus on protecting federal property, federal agents escalated violence on a nightly basis by indiscriminately targeting nonviolent and non-resisting individuals for significant force up to and including force capable of causing serious bodily harm or death.

**12 – PLAINTIFF'S COMPLAINT**






38.

Federal agents blanketed numerous blocks of Portland public streets surrounding the Hatfield Courthouse in toxic tear gas and chemical agents during a global pandemic, disregarding even the health of residents not affiliated with the protests.

39.

Owing to militarized tactics, a failure to properly train federal agents not only in the use of their own weapons but also in crowd control, and a failure of the Department of Homeland Security to have controls in place to minimize the risk of improper use of force by law enforcement officers,[2] protesters and others in attendance were subjected to an out of control show of force.

---

[2]    DHS Lacks Oversight of Component Use of Force, OIG-17-22, Jan. 12, 2017, https://www.oig/dhs.gov/sites/default/files/assets/2017/OIG-17-22-Jan17.pdf.www.oig.dhs.gov

**13 – PLAINTIFF'S COMPLAINT**

40.

This reality was not only obvious to those injured on the ground but was also borne out in the analysis of use of force data. Improperly trained federal agents were found to have used force 16% more often than local law enforcement, who themselves were in violation of their own consent agreement for their policing of protests.[3]

41.

In a May 7, 2021 letter submission in *United States v. City of Portland*, the City of Portland reported to the court that militarized federal agents had escalated violence and use of force, drawing "widespread condemnation and outrage."[4] The City of Portland blamed the federal deployment for "the increased level of intensified demonstrations," stating that the deployment "made a difficult situation worse, inflamed the demonstrations, and contributed to the protracted and more intense protests in the city."[5]

42.

Indeed, federal agents escalated violence on a nightly basis by indiscriminately using excessive force and targeting nonviolent individuals for injury, assault, or arrest without probable cause, often without warning, and while concealing or blocking pathways for protesters to safely disperse.

---

[3]    https://acleddata.com/2020/09/03/demonstrations-political-violence-in-america-new-data-for-summer-2020/.

[4]    3:12-cv-2265-SI,  ECF ## at p. 3.

[5]    *Id.* at p. 5.

**14 – PLAINTIFF'S COMPLAINT**

**Supervisory Defendants' Conduct**

43.

On July 23, 2020, United States District Judge Michael Simon issued a temporary

restraining order (TRO) in Index Newspapers, LLC v. City of Portland, USDC Case No. 20-cv-

1035-SI, exempting journalists and legal observers from orders to disperse and restraining

federal defendants DHS and USMS from arresting, threatening to arrest, or using physical force

directed against any person who they know or reasonably should know is a journalist or legal

observer. The TRO anticipates, consistent with the U.S. Constitution and federal law, that

"lawful crowd-dispersal orders" will be issued prior to the deployment of crowd-control devices

44.

On August 20, 2020, Judge Simon issued a preliminary injunction finding that the federal

defendants had been targeting journalists and legal observers during the month of July 2020 with

unnecessary and excessive force. Judge Simon found that, "the character of the recent past

violations by the Federal Defendants in Portland is particularly egregious" and "the Federal

Defendants have not recognized the wrongful nature of their conduct but instead assert that they

have only engaged in lawful conduct."[6]

45.

Through the preliminary injunction, Judge Simon ordered, among other relief, that

defendants, "their agents and employees, and all persons acting under their direction are enjoined

from arresting, threatening to arrest, or using physical force directed against any person whom

they know or reasonably should know is a Journalist or Legal Observer . . . unless the Federal

Defendants have probable cause to believe that such individual has committed a crime."

---

[6]     Opinion & Order Granting Preliminary Injunction, ECF 157 at 54.

**15 – PLAINTIFF'S COMPLAINT**

46.

On October 9, 2020, the U.S. Court of Appeals for the Ninth Circuit denied the Federal

Defendants' motion to stay Judge Simon's preliminary injunction, observing that, "[a]s of the

time the preliminary injunction was entered, the district court found that the Federal Defendants

had engaged in a pattern of conduct that had persisted for weeks and was ongoing," and that such

pattern of misconduct was "shocking."[7]

> "The many peaceful protesters, journalists, and members of the general public cannot be punished for the violent acts of others. "[T]he proper response to potential and actual violence is for the government to ensure an adequate police presence … and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Collins v. Jordan*, 110 F.3d. 1363, 1373 (9th Cir. 1996) (internal citations omitted)."[8]

47.

On information and belief, on a nightly basis throughout the month of July 2020, to and

including the night Plaintiff was subjected to unnecessary and excessive force, Defendants

Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory Defendants who

manned the "Incident Command Post" or "Emergency Operations Center" within the Hatfield

Courthouse, observed live feed video of federal agents using unnecessary and excessive force

against non-violent protesters, volunteer protest medics, photojournalists, members of the press,

legal observers and bystanders.[9]

48.

On information and belief, on a nightly basis throughout the month of July 2020,

Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory

Defendants observed, or were informed of and knew in real time, or were informed of within 24

---

[7]    977 F.3d at 826, 829.
[8]    *Id*. at 834.
[9]    [See Declaration of Gabriel Russell, Index Newspapers, Dkt 101-5]

**16 – PLAINTIFF'S COMPLAINT**

hours of their occurrence through internal after-action reporting and/or through external sources such as news media, social media and twitter, of at least the following specific acts of unnecessary and excessive force committed by federal agents:

A. On July 5, 2020, without warning or justification federal agents shoved volunteer medics Christopher Durkee and Savannah Guest to the ground as they were following orders to disburse and beat them with truncheons. Durkee and Guest were not engaged in criminal activity and were not arrested. [*Wise et al. v. Portland et al.,* 3:20-cv-01193.]

B. On July 11, 2020, without warning or justification federal agents shot volunteer medic Savannah Guest multiple times on her feet and ankles with rubber bullets as she was kneeling to provide aid to an injured protester. Guest was not engaged in criminal activity and was not arrested. [*Wise.*]

C. On July 11, 2020, without warning or justification federal agents shot Donovan LaBella in the head with an impact munition while Mr. LaBella was standing across the street from the Hatfield Courthouse and holding a music speaker above his head. Mr. LaBella was peacefully protesting and was not engaged in criminal activity and was not arrested.

D. On July 14, 2020, without warning or justification federal agents repeatedly shot volunteer medic Christopher Wise multiple times in the legs with pepper balls as he attempted to render aid to protesters suffering from tear gas exposure in Lownsdale Square. Wise was not engaged in criminal activity and was not arrested. [*Wise.*]

E. On July 15, 2020, without warning or justification federal agents shot a tear gas canister directly at Justin Yau, a journalist covering the protests. Yau was not engaged in criminal activity and was not arrested. [*Index,* ECF 119, filed August 4, 2020.]

**17 – PLAINTIFF'S COMPLAINT**

F.  On July 18, 2020, without warning or justification federal agents struck Navy veteran Christopher David multiple times with their batons in his torso, lower body, hand and back and sprayed him in the face with a chemical agent. Mr. David was peacefully protesting and not engaged in criminal activity and was not arrested. [*Pettibone et al. v. Trump et a.*, 3:20-cv-01464.]

G.  On July 18, 2020, at approximately 11:00 p.m., Duston Obermeyer was among a group of peaceful protesters standing on SW Third in front of the Hatfield Courthouse when, without warning or justification, tear gas was launched into the crowd and a phalanx of federal agents moved into position in front of the courthouse.  Federal agents then shot Obermeyer in the chest with a chemical munition and struck him in the face and chest with a baton.  Obermeyer was peacefully protesting and not engaged in criminal activity and was not arrested. [*Pettibone.*]

H.  On July 19, 2020, without warning or justification federal agents shot photojournalist Jungho Kim just below the heart with a less lethal projectile munition as he was photographing their interactions with protesters 30 feet away.  Kim was not engaged in criminal activity and was not arrested. [*Index*, ECF 62, filed July 21, 2020.]

I.  On July 19, 2020, without warning or justification federal agents shot photojournalist Noah Berger twice with less lethal munitions, struck him multiple times with batons and pepper sprayed in his face while he was filming the protests.  Berger was not engaged in criminal activity and was not arrested. [*Index*, ECF 72, filed July 22, 2020.]

J.  On July 19, 2020, without warning or justification federal agents shot James Comstock, a legal observer with the National Lawyers Guild, in the hand while he was standing with his back against a wall near the intersection of SW Fourth and Main making notes on his

phone. Mr. Comstock was not engaged in criminal activity and was not arrested. [*Index*, ECF 63, filed July 21, 2020.]

K.  On July 20, 2020, without warning or justification federal agents shot Maureen Healy, a peaceful protester, in her left forehead with an unknown projectile as she was attempting to follow orders to disburse from Lownsdale Square. Healy was not engaged in criminal activity and was not arrested. [*Pettibone.*]

L.  On July 20, 2020, without warning or justification federal agents shot Amanda Dunham three times with rubber bullets in her back, upper arm and elbow and deployed tear gas while she was among a group of peaceful protesters near the Multnomah County Justice Center.  Dunham was not engaged in criminal activity and was not arrested. [*Western States et al. v. DHS et al.,* 3:20-cv-01175.]

M.  On July 21, 2020, without warning or justification federal agents shot photojournalist Amy Katz with pepper balls and deployed a tear gas grenade at her feet while she was attempting to document federal agents' activities in the vicinity of the Hatfield Courthouse. Katz was not engaged in criminal activity and was not arrested.  [*Index*, ECF 117, filed August 4, 2020.]

N.  On July 21, 2020, federal agents emerged from the Hatfield Courthouse and without warning or justification shoved journalist Sarah Jeong, who was walking slowly backward away from the courthouse, with such force that both her feet left the ground. Jeong was not engaged in criminal activity and was not arrested. [*Index*, ECF 116, filed August 4, 2020.]

O.  On July 21, 2020, without warning or justification federal agents shot James McNulty, a peaceful protester, four times with rubber bullets and one time with a pepper ball as he

**19 – PLAINTIFF'S COMPLAINT**

was moving through the intersection of SW Main Street and SW Third Avenue. McNulty was not engaged in criminal activity and was not arrested. [*Pettibone.*]

P.  On July 21, 2020, without warning or justification federal agents shot Lewis & Clark College Professor Maureen Healy in the head with an impact munition while she was peacefully protesting and not engaged in criminal activity and was not arrested. [*Western States.*]

Q.  On July 22, 2020, without warning or justification federal agents shot Andre Miller in the head with a tear gas cannister while he was among a group of peaceful protesters standing on Main Street between SW Fourth and SW Fifth Avenues. Miller was not engaged in criminal activity and was not arrested. [*Pettibone.*]

R.  On July 22, without warning or justification federal agents launched a flash bag device at Alex Milan Tracy, striking him, as he was standing in the street near the Hatfield Courthouse, filming. Tracy was not engaged in criminal activity and was not arrested. [*Index*, ECF 22 filed June 30, 2020; ECF 28 filed July 1; ECF 60 filed July 20, 2020; ECF 74 filed July 22, 2020.]

S.  On July 23, 2020, without warning or justification federal agents shot Oregon Public Broadcasting staff reporter Rebecca Ellis in the hand as she was filming federal agents exiting the Hatfield Courthouse. Ellis was not engaged in criminal activity and was not arrested. [*Index*, ECF 88, filed July 28, 2020.]

T.  On July 24, 2020, without warning or justification a federal agent hurled a tear gas cannister at Nichol Denison, striking her in the head, while she was peacefully protesting as a member of the Wall of Moms standing outside and approximately 8 feet away from

**20 – PLAINTIFF'S COMPLAINT**

the fence surrounding the Hatfield Courthouse. Denison was not engaged in criminal activity and was not arrested. [*Pettibone.*]

U.  On July 24, 2020, without warning or justification federal agents shot photojournalist Brian Conley with impact munitions in the chest and foot and fired a tear gas canister at his head.  Conley was not engaged in criminal activity and was not arrested. [*Index*, ECF 87 filed July 28, 2020; ECF 115 filed August 4, 2020.]

V.  On July 24, 2020, without warning or justification federal agents shot Oregon Public Broadcasting staff reporter Jonathan Levinson multiple times with paint ball rounds as he was trying to focus his camera to take pictures of federal agents positioned behind the courthouse fence. Levinson was not engaged in criminal activity and was not arrested. [*Index*, ECF 93, filed July 28, 2020.]

W.  On July 25, 2020, without warning or justification federal agents shot Mac Smiff in the right side of his face with a hard-cap paint ball as he was standing in Lownsdale Square across from the Hatfield Courthouse looking down at his cell phone. Smiff was not engaged in criminal activity and was not arrested. [*Pettibone.*]

X.  On July 25, 2020, without warning or justification federal agents shot freelance photographer Kathryn Elsesser in the arm with an impact munition as she was walking away from the park across the street from the Hatfield Courthouse. Elsesser was not engaged in criminal activity and was not arrested. [*Index*, ECF 89, filed July 28, 2020.]

Y.  On July 26, 2020, without warning or justification federal agents shot VICE News videographer Daniel Hollis multiple times with impact munitions near his left groin and in his back as he was filming wide-angle footage of a mass of protestors in front of the

**21 – PLAINTIFF'S COMPLAINT**

courthouse.  Hollis was not engaged in criminal activity and was not arrested. [*Index*, ECF 91, filed July 28, 2020.]

Z.   On July 27, 2020, without warning or justification federal agents shot photojournalist Amy Katz with an impact munition in the side as she was among a group of press moving away from federal agents.  Katz was not engaged in criminal activity and was not arrested. [*Index*, ECF 117, filed August 4, 2020.]

AA.       On July 27, 2020, without warning or justification federal agents shot freelance photojournalist Emily Molli with impact munitions while standing approximately 75 yards away from protesters that she was filming. Molli was not engaged in criminal activity and was not arrested. [*Index*, ECF 118, filed August 4, 2020.]

49.

Upon information and belief, Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory Defendants issued orders to their subordinate federal law enforcement agents to use unnecessary and excessive force or, with knowledge of material facts approved, were deliberately indifferent to or acquiesced in the use of excessive force or, having a duty to intervene and order the cessation of use of excessive force failed to intervene and order their subordinate federal agents to cease use of unnecessary and excessive force.

50.

Upon information and belief, no reports of improper uses of force by federal agents were made by Defendants Russell, Jones, Morgan, Cline, Burger, Smith and or any other John Doe Supervisory Defendants Supervisory for acts occurring in Portland, Oregon, during July 2020.

**22 – PLAINTIFF'S COMPLAINT**

51.

Upon information and belief, Defendants Russell, Jones, Morgan, Cline, Burger, Smith and other John Doe Supervisory Defendants did not take disciplinary action against any Patrol Level John Doe Defendant for any acts occurring in Portland, Oregon during July 2020. [Index, Simon O&O Granting PI, ECF 157 at 54].

**The Unlawful Seizure of Plaintiff Nathan Haberman-Ducey**

52.

For all relevant times, Plaintiff Nathan Haberman-Ducey ("Mr. Haberman-Ducey") was a law student at Lewis and Clark Law School. After witnessing the violence of the law enforcement response to the George Floyd protests, Mr. Haberman-Ducey sought out a way to best use his privilege for mutual aid and in defense of Black lives. As such, he trained to become a volunteer Legal Observer for the National Lawyers Guild.

53.

As a Legal Observer, Mr. Haberman-Ducey observed and monitored the protests. He stayed with the crowd to record any arrests made and to gather the names of the arrestees. In keeping with this training, Mr. Haberman-Ducey's conduct at the Portland protests was at all times lawful, non-resisting and non-violent.

54.

From June 5, 2020 to July 19, 2020, Mr. Haberman-Ducey dawned his neon-green NLG-issued Legal Observer hat nearly every night to monitor the protests.

55.

On this particular night, July 19, 2020, the City of Portland Mayor Ted Wheeler had spoken out earlier in the day against the Defendants' use of force, saying, "they are sharply

**23 – PLAINTIFF'S COMPLAINT**

escalating the situation … The tactics … are abhorrent … this is completely unconstitutional."[10] Some hours earlier, federal agents had shot Legal Observer James Comstock in the hand while he stood taking notes and posing no threat. (See, *supra,* para 37 - J).

56.

Nevertheless, Mr. Haberman-Ducey remained determined to carry out what he believed to be a core obligation to bear witness and record events for the nation's record, and to be there to track protesters possibly being snatched up off the streets by unidentified agents and "disappeared" into custody. In part, he put his safety on the line because he had realized that for his own part, it had taken witnessing police misconduct first-hand to truly believe the accounts of victims. In order to feel safer, he always brought with him his bicycle so he would be able to quickly remove himself from danger, if necessary.

57.

On this night, Mr. Haberman-Ducey had met up with the protest as a Legal Observer at the Hatfield Courthouse at or around 8:00 p.m. with his bicycle in tow. After night after night of exposure to tear gas, he wore a gas mask for the first time. He stayed with the crowd for many hours. At or around 1:30 a.m., he had taken a seat on a bench in Lownsdale Park at the corner of SW Third Avenue and SW Salmon. The crowd then began moving west through the park toward SW Fourth Avenue to escape the blanket of tear gas Defendants had just unleashed.

58.

Mr. Haberman-Ducey followed the crowd for about 10 minutes until he began to feel a burning sensation on the skin around his neck from exposure to the gas. Because he was wearing a gas mask, he was able to re-enter the park around SW Main Street and SW Fourth Avenue and

---

[10] Defendants ignored Mayor Wheeler's concerns and tear gassed him just three days after his comments while he peacefully attended a protest.

**24 – PLAINTIFF'S COMPLAINT**

walk toward a protester supply station in search of water to ameliorate the burning. Unable to find water, Mr. Haberman-Ducey exited the park at SW Third Avenue between SW Salmon and SW Main and walked his bicycle down the sidewalk around 1:45 am.

59.

John Doe Patrol Level Defendant 61 ("Defendant Doe 61") and John Doe Patrol Level Defendant 62 ("Defendant Doe 62") stood in a group of approximately ten (10) other federal agents on the opposite side of the street in front of the Hatfield Courthouse, on the sidewalk of SW Third Avenue. They watched Mr. Haberman-Ducey walking his bicycle in his neon green Legal Observer hat and had identified him as a Legal Observer.

60.

As Mr. Haberman-Ducey walked with both hands plainly visible on his bicycle, posing no threat to any person or to property, Defendants Does 61 and 62 raised their FN303 riot guns and aimed at Mr. Haberman-Ducey.

61.

Without lawful cause or justification and upon information and belief, Defendants Does 61 and 62 tracked Mr. Haberman-Ducey in their sights. They then fired a first shot, striking Mr. Haberman-Ducey's bicycle near where his right hand held his bike seat.

62.

Shocked and confused, Mr. Haberman-Ducey stopped to see what had struck his bicycle. Before he could look up again, Defendants Does 61 and 62 fired a second round, this time striking his right wrist.

**25 – PLAINTIFF'S COMPLAINT**

63.

Where Defendants Does 61 and 62 shot Mr. Haberman-Ducey, he stood just feet away from the blood stains on the concrete where Donavan LaBella had been shot in the head just over a week earlier. (See, *supra,* para 37 - C).

64.

Immediately after Defendants shot Mr. Haberman-Ducey, he suffered excruciating pain and his wrist showed lacerations, bruising and swelling. He feared he might lose consciousness due to profuse sweating, light-headedness, and his inability to remain standing.



65.

Mr. Haberman-Ducey, confused and disoriented, briefly attempted to continue legal observing. Realizing the impossibility of that, he soon retreated from Lownsdale Park to rest

**26 – PLAINTIFF'S COMPLAINT**

against the wall of a building further north on SW Third Avenue which was about as far as he could get and where he hoped he would be out of the line of fire.

66.

A fellow Legal Observer soon rushed Mr. Haberman-Ducey to the emergency room.

67.

Mr. Haberman-Ducey arrived at hospital approximately 2:26 a.m. and was diagnosed with fracture to in his right wrist. His was placed in a half cast and received medication for pain management.

68.

Mr. Haberman-Ducey returned to the doctor on July 27, 2020 for medical monitoring, and again on August 3, 2020, when he received a removable cast. The cast was removed August 27, 2021. He continues to experience tightness, discomfort and constant popping in his wrist which is likely to get worse rather than better over time.

69.

Mr. Haberman-Ducey experienced for himself that Defendants would not hesitate to use excessive force, regardless of the risk of serious bodily injury posed to nonviolent and non-resisting protestors, Legal Observers, journalists, or any other person in the area. Defendants' use of excessive force caused significant mental and emotional harms, including screaming out in his sleep, feeling trapped within his home, and experiencing unease, panic, discomfort, and a deep sense of vulnerability in the presence of law enforcement.

70.

Defendants' use of excessive force ended Mr. Haberman-Ducey's ability to continue his work as a Legal Observer. Mr. Haberman-Ducey could no longer ride a bike and no longer had

**27 – PLAINTIFF'S COMPLAINT**

any belief in his ability to control his physical safety in the hands of Defendants. When he did finally attempt to legal observe again, the excessive use of tear gas contaminated his protective wrap over the wrist. Unable to thoroughly clean the wrap, he had no way to control the exposure.

71.

Defendants' violation of Mr. Haberman-Ducey's rights resulted in the loss of his mode of transportation during a pandemic when public transportation posed health risks. He was unable to care for himself due to the pain and difficulty posed by gripping or lifting objects, showering, dressing, cooking, exercising and other regular daily activities. Mr. Haberman-Ducey also struggled to use a keyboard which interfered with his summer preparation for his teaching fellowship with the Lawyering and Legal Writing Program at Lewis and Clark Law School.

72.

Supervisory Defendants were aware of the conduct of Defendants Does 61 and 62 alleged herein because they personally directed the conduct or witnessed the conduct via surveillance and data collection and approved of and failed to correct the conduct.

73.

As a result of Defendants' conduct, Mr. Haberman-Ducey experienced economic harms, personal injury and emotional harms, including significant and prolonged physical pain, emotional distress, fear, humiliation, anxiety, and depression.

## CLAIM FOR RELIEF: Fourth Amendment

*Bivens – Plaintiff Nate Haberman-Ducey Against All Supervisory Defendants and John Doe Patrol Level Defendants 61 and 62 for Excessive Force*

74.

Plaintiff Nathan Haberman-Ducey realleges the paragraphs above as if fully set forth herein.

**28 – PLAINTIFF'S COMPLAINT**

75.

At all times material Mr. Haberman-Ducey had a protected liberty interest under the Fourth Amendment not to be subjected to an unreasonable seizure of his person through the application of undue, unnecessary and excessive force.

76.

In Defendants John Doe 61 and 62's decision making and use and application of force against plaintiff, they failed to ascertain or ignored all reasonable and objective facts and their acts and omissions were objectively unreasonable in light of the circumstances confronting them for reasons which, based on information presently known to Mr. Haberman-Ducey, include the following:

A. Defendants lacked knowledge of facts sufficient to form an objectively reasonable belief that Mr. Haberman-Ducey posed an immediate threat of bodily harm to any person.

B. Defendants lacked knowledge of facts sufficient to form an objectively reasonable belief that Mr. Haberman-Ducey had committed or was about to commit a crime.

C. Defendants intentionally used and applied force that was capable of causing Mr. Haberman-Ducey serious injury or death.

D. Defendants intentionally used and applied a quantum of force that was grossly disproportionate to Mr. Haberman-Ducey's mere presence among protesters, journalists and bystanders in the vicinity of the Hatfield Courthouse while knowing that Legal Observers were not subject to crowd dispersal orders.

E. Defendants gave no warning of their intention to use force, even though it was reasonably feasible for defendants to do so.

**29 – PLAINTIFF'S COMPLAINT**

F.  Defendants intentionally misused FN303 rounds as an impact weapon, an application prohibited by Defendants' training and, upon information and belief, an application not authorized by the manufacturer of that weapon.

77.

Defendants John Doe 61 and 62 seized Mr. Haberman-Ducey through the application force and such use of force was unreasonable, unnecessary and excessive and violated Mr. Haberman-Ducey's rights under the Fourth Amendment.

78.

At all times material the law was clearly established in the Ninth Circuit that Defendant John Doe 61 and 62's use of force in the manner and under the circumstances used against Mr. Haberman-Ducey was objectively unreasonable and excessive. Any reasonable law enforcement officer would have known that the force Defendants John Does 61 and 62 used against Mr. Haberman-Ducey was excessive and violated his right to be protected from unreasonable seizure of his person under the Fourth Amendment.

79.

Defendant Supervisors, through their pattern of knowing tolerance, if not overt encouragement, of recurrent acts of excessive force by federal agents under their supervision, command and control, adopted and implemented a *de facto* policy of deployment of excessive force in repudiation of the Fourth Amendment rights of all persons attending protests in the vicinity of the Hatfield Courthouse, including Mr. Haberman-Ducey's.

80.

Defendant Supervisors' *de facto* policy of deployment of excessive force against all persons attending protests in the vicinity of the Hatfield Courthouse set in motion a series of acts

30 – PLAINTIFF'S COMPLAINT

by their subordinate federal agents, inclusive of Defendants John Doe 61 and 62, which they knew or should reasonably have known would cause Defendants John Doe 61 and 62 and others to inflict constitutional injury and Defendant Supervisors' *de facto* policy was the moving force behind the violations of Mr. Haberman-Ducey's Fourth Amendment rights.

81.

As a direct and proximate result of Defendants' actions and inactions alleged above, Mr. Haberman-Ducey was placed in fear for his life and suffered physical and mental pain and emotional distress and noneconomic damages in an amount to be proved at trial.

82.

As a further direct and proximate result of Defendants' actions and inactions alleged above, Mr. Haberman-Ducey's incurred expenses for necessary medical care and treatment to his economic damage in an amount to be proved at trial.

83.

Defendants engaged in the conduct directed toward Mr. Haberman-Ducey maliciously, oppressively or in reckless disregard of his Fourth Amendment rights. Mr. Haberman-Ducey is entitled to an award of punitive damages against defendants to punish and deter them and others from similar deprivations of constitutional rights in the future.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For compensatory noneconomic damages in an amount to be determined by a jury and for prejudgment interest on said sums.

2.     For punitive damages.

**31 – PLAINTIFF'S COMPLAINT**

3.      For Plaintiffs' costs and such other and further relief as the Court may deem just

and equitable; and

4.      Plaintiffs demand a jury trial for all matters triable of right to a jury.


DATED this 14th day of June 2021.


Respectfully submitted,


 /s/Jane L. Moisan_____
Jane Moisan, OSB #181864
Gabriel Chase, OSB #142948


**32 – PLAINTIFF'S COMPLAINT**